**Wendy JEFFERSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0203–CR–183.**

Court of Appeals of Indiana.

Dec. 23, 2002.

---

Eugene C. Hollander, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Wendy Jefferson (Jefferson), appeals her conviction for possession of marijuana, a Class A misdemeanor, Ind.Code § 35–48–4–11.

### ISSUE

Jefferson raises one issue for review, which we restate as follows: whether the trial court erred in denying her motion to suppress.

We reverse.

### FACTS AND PROCEDURAL HISTORY

On November 1, 2001, Officer Brian Morris (Morris) of the Indianapolis Police Department (IPD) was on a routine patrol in his unmarked police car when he saw Jefferson sitting behind the wheel of an automobile parked illegally in the vicinity of the 3500 block of Kenwood, Indianapolis, Indiana. Morris told Jefferson to move her vehicle. Apparently she did, because approximately fifteen minutes later, Morris saw Jefferson again, this time parked legally around the corner in the 200 block of West 35th Street. Morris noticed Jefferson's car the second time because of the group of men standing around it, with one gentleman leaning in through the front passenger window.

All but one of the men walked away as Morris pulled his police car alongside Jefferson's car. By now, two additional IPD officers in separate vehicles had joined Morris. All three officers exited their vehicles and approached Jefferson's car. Each officer wore a black police vest with the word "Police" in large white letters across the front and back, their IPD badges on a chain around their necks, and their service revolvers. Morris directed Jefferson to get out of her car and walk around to stand behind it, which she did. The one remaining man stayed where he was on the sidewalk. With all three officers standing right by the car, Morris asked for, and received, the names of both Jefferson and the man. Morris then radioed their names to his dispatcher to check for outstanding warrants. Learning first that there were no warrants for the male, Morris let him leave. A few minutes later, Morris was advised that there was an outstanding warrant on Jefferson for operating a motor vehicle without having obtained a driver's license.[1] Jefferson was placed under arrest. The whole process lasted approximately five minutes.

---

1. Ind.Code § 9–24–18–1 makes it a Class C misdemeanor to operate a motor vehicle on the highway without having first obtained a valid driver's license.

During the few minutes that elapsed between the unidentified male leaving and the information on Jefferson coming through, a baggie containing a green leafy substance presumed to be marijuana was found on the sidewalk by Jefferson's car, where the unidentified male had been standing. After Jefferson was placed under arrest, Morris searched Jefferson's car and found what he believed to be a marijuana cigarette and another baggie of green leafy vegetation under the driver's seat. The substance was subsequently confirmed to be marijuana.

The State charged Jefferson with possession of marijuana in the aggregate weight of less than thirty grams.[2] Immediately prior to her bench trial on January 29, 2002, Jefferson moved to suppress all evidence of her arrest and the subsequent discovery of marijuana in her car. She argued that because there was no reasonable suspicion to conduct an investigatory stop, "the search of the vehicle was fruit of the poisonous tree and should be excluded . . . based on the [ ] illegal stop of Miss Jefferson." (Tr. p. 23). The trial court denied the motion, stating:

> Okay. The analysis that I am going through is that number one it is not a stop. The person was already stopped. That's what the evidence presented. The officer . . . any officer can walk up to a person and ask them for a personal identification and they have to provide that, in fact if they don't it's a crime. So

the officer was fine when he did that and got that . . . asked for that information. The problem I have is from when he got that information to [sic] the defendant waiting while he checked it out on the computer. But I don't have any evidence that said the defendant tried to leave and couldn't leave. I know you are saying that because other officers were there. That's not good enough for me because other people left. So until I have some other information, at this point I am going to deny the Motion to Suppress.[3]

(Tr. pp. 26–27).

Jefferson's actual trial followed immediately upon the heels of the suppression hearing. During the second part of his testimony, Morris testified:

Q. So, when you saw the defendant the second time in the two hundred block of West 35th Street, what drew your attention to the defendant . . . ?

A. There were a group of individuals standing around her car on the sidewalk. Specifically, one male who was leaned [sic] in the passenger side window. As we got closer, that individual stood up and a couple of the other gentlemen that were there began to walk away.

. . .

Q. And the other gentleman [on] the passenger side stayed, correct?

A. Yes.

**2.** I.C. § 35–48–4–11.

**3.** Immediately after denying Jefferson's Motion to Suppress, the trial court asked Jefferson's counsel whether the "Motion to Suppress was for everything discovered?" When counsel indicated that it was, the trial court said: "Under all of the evidence that was presented, the marijuana that was found outside of the car on the passenger side, that is not coming is [sic]?· That is not even related to this, especially . . [.] I mean that's not a

problem. But this, now specifically we are left with the marijuana that was found inside of the car on the driver's side." The State said: "Okay." (Tr. p. 29). Further, the only marijuana admitted into evidence was the .55 grams obtained from the marijuana cigarette found under Jefferson's car seat. Evidently, therefore, the baggie of marijuana also found in the car was not admitted into evidence either. (See Tr. p. 42).

Q. Okay. And then at that time, you asked [her] to get out of the vehicle, correct?

A. I believe so, yes.

. . .

Q. Okay. And where did you take her?

A. To the rear of the vehicle.

. . .

Q. Okay. Did you tell them that they could . . . that they could go?

A. I don't believe so.

Q. Okay. Did . . . you began asking them questions, correct?

A. Personal information questions.

(Tr. pp. 11, 16–17). Under cross-examination, Morris elaborated:

Q. Okay. How was [Jefferson] taken to the rear of the car?

A. I asked her to step to the back of the car.

Q. Okay. [A]nd then who was in her presence at that time?

A. All three of us were still right by the car.

. . .

Q. [H]ow far from her were you?

A. Two, three feet.

. . .

Q. And at that time you asked her . . . for her identification, correct?

A. Yes.

Q. And she gave you it, correct?

A. I don't believe she had an Indiana I.D. card.

·Q. Okay.

A. It was verbal. . . .

Q. It was verbal. Okay. And did you release her at that time?

A. No.

Q. Okay. And the you proceeded to call her into your information (sic)? Okay. And was she . . [.] while she was . . . while she was standing there wait-ing for that information to come back was she free to . . [.] free to leave?

A. She was temporarily detained until we found out if she had a warrant.

Q. Okay. So she wasn't able to go back in her car?

A. We wouldn't allow her to go back in her car for officer safety reasons.

. . .

Q. Okay. So she wasn't going anywhere?

A. She wasn't gong [sic] to get back i [sic] the car, no.

Q. Or if she had tried to walk away.

A. I can't answer that.

Q. You can. If someone . . . if someone who you were running information on tried to walk away, what would you do?

A. I would say that we would hold them there. Until we found out . . .

(Tr. pp. 33–35).

The State's only other witness was the chemist who analyzed the evidence found in Jefferson's car and determined it to be marijuana. When the State moved to admit the contents of the marijuana cigarette found inside Jefferson's car, Jefferson renewed her objection to its admission because the "search was prefaced with an illegal investigatory stop that was not supported by reasonable suspicion." (Tr. p. 39). The objection was overruled.

Jefferson then testified to the limited fact that from the time the IPD approached her vehicle, until she was arrested, she never felt free to leave the scene. Thereupon, the trial court found Jefferson guilty of possession of marijuana as a Class A misdemeanor. Jefferson now appeals.

## DISCUSSION AND DECISION

Jefferson argues that Officer Morris and the IPD violated her Fourth Amendment right to be secure against unreasonable searches and seizures when they "temporarily detained"[4] her on November 1, 2001. For this reason, Jefferson argues, the trial court erred in denying her motion to suppress. The State counters that the "police did not need reasonable suspicion to approach Defendant and ask for her personal information" because "[t]his was a consensual and brief encounter, not an investigative stop." (Appellee's Br. p. 4). This is so, the State argues, because "[u]nder the totality of the circumstances presented here, no message of compliance [with the officers' demands] was conveyed by the conduct of the officers." (Appellee's Br. p. 8). In other words, the State claims that Jefferson was free to leave at any point prior to her arrest.

■ The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." This protection extends to a person's automobile, as well, although to a lesser degree. *Brown v. State*, 653 N.E.2d 77, 79 (Ind.1995). Any evidence obtained from an unconstitutional seizure may not be used in a subsequent prosecution and is the proper subject of a motion to suppress. *Id.*

■ We review a trial court's ruling on a motion to suppress for an abuse of discretion. Generally, no abuse of discretion occurs where there exists sufficient evidence justifying the initial seizure. *Crabtree v. State*, 762 N.E.2d 241, 244 (Ind.Ct.App.2002). As with other sufficiency determinations, we do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id.* Unlike other sufficiency determinations, however, we must also consider the uncontested evidence most favorable to the defendant, in order to effectuate the broad protection afforded by the Fourth Amendment. *Brown*, 653 N.E.2d at 79. "The provision must receive a liberal construction in its application to guarantee the people against unreasonable search and seizure." *Id.*

■ As we stated in *Finger v. State*, 769 N.E.2d 207, 212 (Ind.Ct.App.2002), *trans. pending* (citations omitted): "There are three levels of police investigation. Two of these, an investigatory stop and an arrest or detention, implicate the Fourth Amendment's prohibition against unreasonable searches and seizures. The third, a consensual encounter, does not." As long as an individual engaged by the police remains free to leave, the encounter is consensual. *Id.* The determination whether a citizen is free to walk away from a police contact is "whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Thus, the test is not determined subjectively by the individual citizen but from the perspective of a reasonable person. *Finger*, 769 N.E.2d at 212–13.

In *Overstreet v. State*, 724 N.E.2d 661, 664 (Ind.Ct.App.2000), we envisioned several factual scenarios where a person would reasonably believe she was not free to leave, including "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that

4. "Temporarily detained" were the words Morris used to describe the stop. (Tr. p. 34).

compliance with the officer's request might be compelled." Additionally, in *State v. Carlson*, 762 N.E.2d 121, 126 (Ind.Ct.App. 2002), we noted that while many jurisdictions find that no seizure occurs from the simple act of an officer approaching the occupant of a parked car to ask a question [5], the situation could escalate to a seizure "when a police officer orders a suspect to freeze or get out of the vehicle. The Fourth Amendment may also be implicated when police 'box in' a suspect's vehicle, approach the vehicle 'on all sides by many officers,' point a gun at the suspect, or order the suspect to place his hands on the wheel." *Id.* (citations omitted).

Thus, if the instant facts demonstrate that Jefferson remained at the scene voluntarily, then upon learning of Jefferson's outstanding warrant, the police had probable cause to arrest her, thereby rendering the subsequent search of her vehicle constitutionally permissible as a search incident to a lawful arrest. *Sebastian v. State*, 726 N.E.2d 827, 830 (Ind.Ct.App.2000). Therefore, the ultimate resolution of Jefferson's Motion to Suppress depends upon whether Jefferson's detention, prior to her arrest, was constitutionally permissible.

▉▉▉▉ Our analysis begins with the recognized presumption that the Fourth Amendment prohibits warrantless searches and seizures. *Edwards v. State*, 762 N.E.2d 128, 132 (Ind.Ct.App.2002). When the State acts without the benefit of a warrant, it has the burden of demonstrating that the challenged action fits within one of the warrant exceptions. *Id.* One such exception is when a police officer detains a person for investigative purposes. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Excep-

tions to the warrant requirement are strictly construed, however. *Burkett v. State*, 736 N.E.2d 304, 306 (Ind.Ct.App. 2000).

After reviewing the evidence, we cannot determine that Jefferson's initial encounter with Officer Morris was consensual. As the State points out, "[s]o long as a reasonable person would feel free to disregard the police and go about his or her business, the encounter is consensual and Fourth Amendment scrutiny is not triggered." (Appellee's Br. at 6). While true, this principle does not conform to the evidence presented at trial. Based on Morris' own words, Jefferson was "temporarily detained" prior to her arrest. He clearly testified that he would not have permitted her to walk away even if she had tried to do so. Nor was she free to get into her car and drive away. Understandably, Jefferson testified that she did not feel free to leave the scene. Thus, regardless of the label applied by the State, this initial encounter was not consensual. Therefore, it constituted an investigatory stop.

▉▉▉▉ To withstand Constitutional scrutiny, an investigatory stop requires the presence of a reasonable suspicion based on articulable facts which, together with the reasonable inferences arising therefrom, would permit an ordinary prudent person to believe that criminal activity has or was about to occur. *Burkett*, 736 N.E.2d at 306. "Such reasonable suspicion must be comprised of more than an officer's general 'hunches' or unparticularized suspicions." *Webb v. State*, 714 N.E.2d 787, 788 (Ind.Ct.App.1999). The facts supporting a reasonable suspicion that criminal activity is afoot must rise to "some minimum level of objective justification"

---

**5.** Indeed, I.C. § 9–21–8–1 makes it "unlawful for a person to knowingly fail to comply with a lawful order or direction of a law enforce-ment officer invested by law, with authority to direct, control, or regulate traffic."

for the temporary detention of a person to be valid. *Reeves v. State*, 666 N.E.2d 933, 936 (Ind.Ct.App.1996). The totality of the circumstances is to be considered in evaluating whether an officer had a reasonable suspicion in a particular case. *See Wilson v. State*, 670 N.E.2d 27, 31 (Ind.Ct.App. 1996).

■ Our supreme court has recognized that the Fourth Amendment permits requesting a motorist stopped for a traffic violation to exit a car. *Lockett v. State*, 747 N.E.2d 539, 543 (Ind.2001). Yet, even that detention may only be "as necessary to complete the officer's work related to the illegality for which the motorist was stopped." *Mitchell v. State*, 745 N.E.2d 775, 788 (Ind.2001). Here, however, there was no illegal traffic violation justifying Jefferson's initial detention. The only articulable facts are that Jefferson had twice parked in the neighborhood within a relatively brief period of time, and that the second time she parked, several individuals gathered by her car.

Applying these precepts to the facts at hand, we must conclude that the temporary detention of Jefferson by the police on November 1, 2001, was an unconstitutional seizure requiring the suppression of the evidence seized during the subsequent warrantless search of her car. We find that, despite the State's contention that the IPD's encounter with Jefferson was consensual, this was an investigatory stop, it was "a seizure of [her] person implicating [her] Fourth Amendment rights." *Burkett*, 736 N.E.2d at 306.

Reversed.

MATTINGLY–MAY, J., and ROBB, J., concur.