Tammi QUINN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 84A01–0210–CR–404.

Court of Appeals of Indiana.

July 31, 2003.

---

James W. Boswell, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Tammi Quinn brings this interlocutory appeal challenging the failure to suppress evidence seized during a traffic stop. We affirm.

### Issue

Quinn raises one issue, which we restate as whether the trial court properly denied her motion to suppress.

### Facts

At approximately 8:00 on the evening of August 14, 2001, retired police officer Greg McCoy was working as a security guard at a grocery store in Terre Haute. During his shift, an unknown individual approached McCoy and said that he had seen Quinn in a neighboring parking lot. The stranger also said that Officer Denzil Lewis, a Terre Haute police officer, had asked him to inform Officer Lewis if he ever saw Quinn. The stranger pointed to a group of people standing in a parking lot about 120 yards away from where McCoy was standing and said that Quinn was in the group. The group was gathered around a truck towing a pontoon boat and a smaller car. It was dark outside and although the parking lot was lit, McCoy did not remember the color of the vehicles or what model the smaller car was. McCoy was able to ascertain that one of people standing near the pontoon boat was a woman but could not see her features.

McCoy called the Terre Haute Police Department and relayed this information to the shift commander, Officer Hugh Crawford. Ten minutes passed, and McCoy called Officer Crawford again. Officer Crawford informed McCoy that there was an outstanding arrest warrant for Quinn and that he would send an officer to the store. At that time, the group left the parking lot, including the woman, in the car and the truck towing the boat. Approximately three or four minutes after the vehicles left, two police cars arrived at the grocery store. McCoy described the truck towing the pontoon boat, but Officer Troy Davis, one of the investigating officers, did not recall receiving any description of a smaller car.

Officer Davis left in the direction of the truck towing the pontoon boat but was delayed by a passing train for approximately five to ten minutes. Officer Davis decided to travel in the direction of Quinn's home to look for the pontoon boat. As he was driving toward Quinn's house, Officer Davis saw a truck pulling a pon-

toon boat at a gas station parking lot. Officer Davis observed a woman walk out of the gas station and briefly talk with a man in the truck, get in a small red car, and drive off behind the truck and boat. Although Officer Davis had not seen the red car before, he stopped the car after it got onto the road but before he observed the driver commit any traffic violations.

Officer Davis had received a description of Quinn from the dispatcher, who described her as a white female with brown hair; Davis was also informed of Quinn's height and weight. The woman driving the red car matched this description. The driver of the car "explained" to officer Davis that she did not have her driver's license with her but that she had other identification. The driver produced a social security card, birth certificate, and a Texas identification card, all three of which indicated that she was Regina Sprague. Officer Davis radioed in the name and ran the social security number through his computer. While Officer Davis was waiting for the results of the social security number check, another officer, Officer Pearce, communicated to Officer Davis over the radio that he knew Sprague and could identify her. Officer Davis waited approximately ten minutes before Officer Pearce arrived to identify Sprague. When Officer Pearce arrived, he told Officer Davis that the driver of the car was not Sprague.

Thereafter, Officer Lewis arrived on the scene with a picture of Quinn and identified the driver of the car as Quinn. Quinn was then arrested for false informing and on the outstanding warrant. Pursuant to the arrest, the red car was searched and more than three grams of methamphetamine were found.

On August 20, 2001, Quinn was charged with Class A felony dealing in methamphetamine. On April 23, 2002, Quinn filed a motion to suppress the evidence found during the search. Following a hearing on the matter, the trial court denied Quinn's motion. Quinn now appeals.

### Analysis

"We review the denial of a motion to suppress in a manner similar to other sufficiency matters." *Volz v. State*, 773 N.E.2d 894, 897 (Ind.Ct.App.2002), *trans. denied* (2003). We do not reweigh the evidence, and we consider conflicting evidence most favorable to the denial of the motion to suppress. *Id.* However, unlike the typical sufficiency case where only the evidence favorable to the judgment is considered, we also consider the uncontested evidence favorable to the defendant. *Id.*

Quinn argues that there was not reasonable suspicion to support stopping her car because the anonymous tip was vague and uncorroborated. We need not address the issue of whether reasonable suspicion to support Quinn's stop existed, however, because we affirm the denial of her motion to suppress on other grounds.

Our decision is based on the same rationale as that employed in *U.S. v. Green*, 111 F.3d 515 (7th Cir.1997), *cert. denied*, 522 U.S. 973, 118 S.Ct. 427, 139 L.Ed.2d 328. In *Green*, two police officers were on patrol when they observed two men in a light blue Chevrolet. *Id.* at 517. One of the officers identified the car as the same car that the previous night had been parked in front of the residence of a man wanted on a federal warrant. *Id.* The officers thought that one of the vehicle's occupants might have been the man with the outstanding warrant or that the occupants of the car might know the man's whereabouts. *Id.* The officers followed the car until it pulled into a driveway, where they parked behind it, blocking it in. *Id.* The officers immediately obtained identifi-

cation from the occupants, David and Avery Green. *Id.* The officers entered the identification information into their computer and discovered that Avery was wanted on an outstanding warrant. *Id.* The officers arrested Avery and searched the car. *Id.* During the search, the officers discovered crack cocaine and a gun. *Id.* David was charged with possession of crack cocaine with the intent to distribute it, carrying a firearm during and in relation to a drug trafficking offense, and possession of a firearm by a felon. *Id.*

David filed a motion to suppress, which the lower court denied. *Id.* A jury convicted David of the first and third counts. *Id.* at 518. On appeal David argued that the stop was made without reasonable suspicion, violating the Fourth Amendment and requiring suppression of the evidence of the unlawful search. *Id.* The court concluded that although the stop was made without reasonable suspicion, suppression of the evidence was not required. *Id.*

The court reached this conclusion by first recognizing that the exclusion of evidence is not the result of a simple "but for" test. *Id.* at 520. The court observed that not all evidence is the " 'fruit of the poisonous tree' " because it is the result of an illegal search or seizure. *Id.* (quoting *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963)). "Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* (internal quotations omitted). Evidence may be purged of the primary taint if the causal connection between the illegal police conduct and the procurement of the evidence is "so attenuated as to dissipate the taint of the illegal action." *Id.* at 521 (internal quotations omitted).

The "attenuation doctrine" is used to admit evidence in three general situations, including the admission of a voluntary confession after an illegal arrest, the admission of evidence obtained during a consensual search after an illegal seizure, and the admission of a voluntary confession given after a *Miranda* warning where an earlier confession was obtained before advising a defendant of his or her Fifth Amendment rights. *Id.* Three factors for consideration in determining whether the causal chain is sufficiently attenuated are: "(1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct." *Id.* (citing *Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975)). The important consideration in the third factor is whether the evidence came from " 'the exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *Id.* (quoting *Wong Sun,* 371 U.S. at 488, 83 S.Ct. at 417).

The *Green* court considered the three *Brown* factors focusing primarily on the last two. The court suggested that unlike cases that are dependent on a suspect's reaction in proximity to the police illegality, this case involved a lawful arrest due to an outstanding warrant independent of the suspect's reaction to any police illegality. *Id.* at 522. The court further reasoned that because of the outstanding arrest warrant, there is "no chance" that the police could have exploited an illegal arrest by creating a situation in which the criminal response is predictable; for example, creating a situation where a suspect will flee, giving the police an independent basis for an arrest and a subsequent search incident to arrest. *Id.*

The *Green* court concluded that Avery's lawful arrest based on the outstanding warrant was sufficient to remove the taint of the illegal stop. *Id.* at 521. The court stated:

It would be startling to suggest that because the police illegally stopped an

automobile, they cannot arrest an occupant who is found to be wanted on a warrant—in a sense requiring an official call of "Olly, Olly, Oxen Free." Because the arrest is lawful, a search incident to the arrest is also lawful. The lawful arrest of Avery constituted an intervening circumstance sufficient to dissipate any taint caused by the illegal automobile stop.

*Id.*

We recognize that in *Jefferson v. State,* 780 N.E.2d 398, 400 (Ind.Ct.App.2002), a panel of this court addressed a factually similar case and reached the opposite conclusion as that reached by the *Green* court. In *Jefferson,* Indianapolis police officers approached a parked car in which Jefferson was sitting and talking to people on the street. *Id.* The police officers ordered Jefferson to exit the car, which she did. *Id.* The police asked Jefferson her name and ran a computer check for outstanding warrants. *Id.* The computer search revealed that Jefferson had an outstanding warrant for operating a motor vehicle without a license. *Id.* The police arrested Jefferson and performed a search of her car incident to the arrest and discovered a small baggie containing marijuana. *Id.* Jefferson was charged with Class A misdemeanor possession of marijuana and moved to suppress the admission the marijuana. *Id.* The trial court denied her motion to suppress, Jefferson was convicted, and she appealed. *Id.*

On appeal, the State argued that the encounter between Jefferson and the police was consensual. A panel of this court concluded, however, that it was not consensual, and "there was no illegal traffic violation justifying Jefferson's initial de-

tention." *Id.* at 405. The court held that Jefferson's temporary detention was unconstitutional, requiring evidence seized during the search of her car to be suppressed. *Id.*

After a thorough examination of both cases, we elect to follow the rationale provided in *Green.*[1] We begin our analysis with the presumption that Quinn's stop was not based on reasonable suspicion. Even assuming arguendo that Quinn's stop was illegal, we cannot conclude that the trial court erred in denying her motion to suppress. As the *Green* court recognized, not all evidence is fruit of the poisonous tree and subject to suppression simply because it would not have come to light but for illegal police activity. *Green,* 111 F.3d at 520 (quoting *Wong Sun,* 371 U.S. at 487–88, 83 S.Ct. at 417–18). Here, the causal chain is sufficiently attenuated to dissipate any taint of an illegal stop, allowing the evidence seized during the search to be admitted. *See id.* at 521.

In analyzing the first factor enumerated in *Brown,* we acknowledge that the time elapsed between the illegality and the acquisition of evidence was not significant. *See id.* (citing *Brown,* 422 U.S. at 603–04, 95 S.Ct. at 2261–62). The officers' testimony indicates that Quinn was stopped for about ten minutes before she was arrested and the car was searched. This short amount of time alone is insufficient to dissipate the taint of the illegal stop. However, in considering the other two *Brown* factors it is clear that the taint of the illegal stop was sufficiently dissipated.

The second *Brown* factor, the presence of intervening circumstances, is clearly met here. *See id.* (citing *Brown,* 422 U.S. at 603–04, 95 S.Ct. at 2261–62). Officer

---

1. We note that neither case is binding on our decision today. *See Palmer v. State,* 744 N.E.2d 525, 530 (Ind.Ct.App.2001) (declining to follow another panel of this court's decision in a factually similar case); *rev'd on other* grounds; *McBride v. State,* 440 N.E.2d 1135, 1137 n. 4 (Ind.Ct.App.1982) (recognizing that, although federal precedent was not binding, it was persuasive authority).

Davis believed that Quinn was the driver of the red car and was aware that she had an outstanding arrest warrant. The driver was eventually identified as Quinn and was arrested pursuant to the warrant. Quinn's lawful arrest, which was based on an outstanding warrant, certainly was an intervening circumstance in this case. *See id.* at 521.

The third factor enumerated in *Brown,* the purpose and flagrancy of the official misconduct, is also an important consideration here. *See id.* (citing *Brown,* 422 U.S. at 603–04, 95 S.Ct at 2261–62 (1975)). The purpose of the stop was to arrest Quinn pursuant to an outstanding warrant because of Officer Davis' belief that she was the driver of the car. Although the stop fails the reasonable suspicion test, there is no evidence indicating that Quinn was stopped so that the police could search her car. There is no evidence suggesting any impropriety as the purpose for stopping Quinn. Because the police stopped Quinn with the purpose of executing a lawful arrest warrant, we cannot conclude that the officers' actions were flagrant or intended to exploit an illegal arrest by creating a situation in which the criminal response is predictable. *See id.* at 522.

Furthermore, unlike both *Green* and *Jefferson,* this is not an instance in which a police officer stopped a vehicle with less than reasonable suspicion and upon further investigation discovered that an arrest warrant had been issued for an occupant of the vehicle. Instead, in this case Officer Davis was aware that an outstanding arrest warrant existed for Quinn and believed that the driver of the red car was Quinn before he stopped her vehicle. Thus, it is much more likely that the stop was effectuated to lawfully arrest Quinn rather than to circumvent the protections of the Fourth Amendment and engage in a "fishing expedition" to obtain evidence against Quinn.

The time elapsed between the illegality and the acquisition of the evidence was minimal. However, Quinn's lawful arrest was an intervening circumstance, and because the purpose of the police misconduct was to lawfully arrest Quinn, any flagrancy of the official misconduct is negligible. Here, the evidence was not obtained by the exploitation of an illegal stop, but by means sufficient to purge any taint of the illegal stop, that is a lawful arrest based on an outstanding warrant. Based on these factors, we conclude that Quinn's lawful arrest was sufficient to remove the taint of the illegal stop.

This conclusion is reinforced by two other considerations. First, our holding today avoids the undesirable effect of prohibiting the police from arresting Quinn when there was an outstanding warrant for her arrest because the initial stop may have been based on something less than reasonable suspicion. As the *Green* court observed, this would require "an official call of 'Olly, Olly, Oxen Free.'" *Id.* at 521.

Also, the suppression of the evidence obtained in this case would provide little deterrent effect, which is the primary purpose of the exclusionary rule. The *Green* court described the exclusionary rule as being calculated to prevent, not repair, police illegality by removing the incentive to disregard constitutional guarantees. *Id.* at 523 (citation omitted). " 'Because the primary purpose of the exclusionary rule is to discourage police misconduct, application of the rule does not serve this deterrent function when the police action, although erroneous, was not undertaken in an effort to benefit the police at the expense of the suspect's protected rights.' " *Id.* (quoting *U.S. v. Fazio,* 914 F.2d 950, 958 (7th Cir.1990)). Because the purpose of the stop was not intended to exploit Quinn's Fourth Amendment rights, suppressing the evidence obtained pursuant to the lawful arrest would have minimal deterrent effect on illegal police behavior.

## Conclusion

In this case, where a stop was undertaken on less than reasonable suspicion, but with the purpose of executing a lawful outstanding arrest warrant, the trial court properly denied Quinn's motion to suppress because the intervening lawful arrest was sufficient to remove the taint of any police illegality. We affirm.

Affirmed.

SHARPNACK, J., concurs.

RILEY, J., concurs in result with opinion.

RILEY, Judge, concurs in result.

I concur in result. The majority opinion recognizes that in the case of *Jefferson v. State*, 780 N.E.2d 398, 400 (Ind.Ct.App. 2002), a factually similar case was decided by Judges Robb, Mattingly-May, and myself in a different manner. The distinguishing difference, however, was that in this case, the police officers did have knowledge of an outstanding warrant for the arrest of Quinn prior *to* the stop of the vehicle. The stop was reasonable based upon the knowledge of the police officers that an outstanding arrest warrant needed to be served upon Quinn.

In *Jefferson*, however, the stop was not based upon a reasonable suspicion. After the illegal stop, it was discovered that Jefferson had an outstanding warrant for operating a motor vehicle without a driver's license. The detention prior to her arrest was not constitutionally permissible.