**Michael SHIRLEY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0306–CR–480.

Court of Appeals of Indiana.

Feb. 13, 2004.

Ann M. Sutton, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher C.T. Stephen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROOK, Chief Judge.

### Case Summary

Appellant-defendant Michael Shirley appeals his conviction for possession of a controlled substance,[1] a Class D felony. We affirm.

---

1. Ind.Code § 35–48–4–7(a).

### Issues

Shirley raises two issues, which we restate as:

I. Whether the evidence obtained from a search of Shirley should have been suppressed due to an alleged improper initial stop; and

II. Whether the State presented sufficient evidence to support the guilty verdict.

### Facts and Procedural History

On June 2, 2002, around 2:20 a.m., Indianapolis Police Officer Jayson Campbell saw Shirley riding a bicycle erratically. That is, Shirley was weaving between the northbound and southbound lanes of North Sherman Drive and fell off the bicycle two or three times. Concerned that Shirley might be having a health problem or was impaired, Officer Campbell asked him as he rode closer if he was all right. "Yeah, I'm fine, I'm fine, I'm just, you know, riding my bike," replied Shirley. Tr. at 25. Noticing that Shirley had a strong odor of an alcoholic beverage on his breath, glassy eyes, slightly slurred speech, and swayed as he spoke, Officer Campbell suspected intoxication and requested identification. Shirley complied. Upon relaying the information to a control operator, Officer Campbell learned that Shirley had an outstanding warrant.

Officer Campbell placed Shirley under arrest pursuant to the warrant and conducted a search incident to arrest. Officer Campbell found in Shirley's front right pant pocket an unlabeled pill bottle containing four pills for which Shirley had no prescription. Officer Campbell described the pills to the control operator, who advised him that they were Roxicet, Oxycontine, a Schedule II controlled substance.[2]

---

2. Indeed, lab tests indicated that the pills were oxycodone, a schedule II controlled substance. See Ind.Code § 35–48–2–6(b)(1)(N).

Shirley stated, "Man, I got those pills from my mom." *Id.* at 27. At that point, Officer Campbell arrested Shirley for possession of controlled substance and public intoxication.

The State charged Shirley with possession of a controlled substance. Shirley filed a motion to suppress the evidence obtained during the search. The trial court held a hearing on the motion in mid-December 2002. Following the denial of the motion, a trial occurred, resulting in a guilty verdict.

### Discussion and Decision

#### I. Denial of Motion to Suppress and Admission of Evidence

Shirley asserts that Officer Campbell did not have reasonable suspicion to stop him, and that therefore the evidence found during the ensuing search of Shirley should have been suppressed. In particular, Shirley contends that Officer Campbell was not responding to any call, saw nothing more than Shirley get off his bike, and had no indication that Shirley was about to commit any criminal offense. Shirley further notes that while Officer Campbell stopped Shirley for safety issues, "Officer Campbell did not have any concerns about Shirley's safety as he passed him" and "did not detail the traffic at the time to substantiate his concern." Appellant's Br. at 11.

Citing *Quinn v. State,* 792 N.E.2d 597 (Ind.Ct.App.2003), *trans. denied,* the State responds that the "propriety of the stop is irrelevant in light of the outstanding arrest warrant for [Shirley] discovered by Officer Campbell." Appellee's Br. at 4. We cannot agree. In *Quinn,* we held that "where a stop was undertaken on less than reasonable suspicion, but with the purpose of executing a lawful outstanding arrest warrant, the trial court properly denied" the defendant's motion to suppress "because

the intervening lawful arrest was sufficient to remove the taint of any police illegality." *Quinn,* 792 N.E.2d at 603. In *Quinn,* the officer knew of an outstanding arrest warrant for the defendant and stopped the defendant-driver specifically to execute the warrant despite the fact that the defendant-driver had not committed any traffic violations. In the present case, Officer Campbell had no idea there was an arrest warrant for Shirley until he radioed in Shirley's identification. Thus, we find *Quinn* inapposite here. *See id.* (Riley, J. concurring in result with opinion).

■■■■ "We review a trial court's ruling on a motion to suppress for an abuse of discretion." *Jefferson v. State,* 780 N.E.2d 398, 403 (Ind.Ct.App.2002); *see also Crabtree v. State,* 762 N.E.2d 241, 244 (Ind.Ct. App.2002). "Generally, no abuse of discretion occurs where there exists sufficient evidence justifying the initial seizure." *Jefferson,* 780 N.E.2d at 403. As in other sufficiency matters, the record must disclose substantial evidence of probative value that supports the trial court's decision. *See Finger v. State,* 799 N.E.2d 528, 533 (Ind.2003). We do not reweigh the evidence and we consider conflicting evidence most favorably to the trial court's ruling. *Id.; see also Crabtree v. State,* 762 N.E.2d 217, 219 (Ind.Ct.App.2002) (citing *Edwards v. State,* 759 N.E.2d 626, 630 (Ind.2001)).

Our supreme court has summarized the three levels of police investigation:

*The Fourth Amendment* regulates nonconsensual encounters between citizens and law enforcement officials and *does not deal with situations in which a person voluntarily interacts with a police officer.* A full-blown arrest or a detention that lasts for more than a short period of time must be justified by probable cause. A brief investigative stop may be justified by reasonable suspicion

that the person detained is involved in criminal activity.

*Finger,* 799 N.E.2d at 532 (emphases added).

█ In order to determine whether Officer Campbell impinged upon Shirley's Fourth Amendment rights, we must first analyze what level of police investigation occurred. As the above excerpt indicates, not every encounter between a police officer and a citizen amounts to a seizure requiring objective justification. Indeed, to characterize every street encounter between a citizen and the police as a seizure, while not enhancing any interest guaranteed by the Fourth Amendment, would impose wholly unrealistic restrictions upon a wide variety of legitimate law enforcement practices. *See United States v. Mendenhall,* 446 U.S. 544, 553–54, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). As long as an individual engaged by the police remains free to leave, the encounter is consensual, *see Jefferson,* 780 N.E.2d at 403, and there has been no intrusion upon that person's liberty or privacy to require some particularized and objective justification. *See Mendenhall,* 446 U.S. at 554, 100 S.Ct. 1870. Examples of circumstances under which a reasonable person would have believed he was not free to leave include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Overstreet v. State,* 724 N.E.2d 661, 664 (Ind.Ct. App.2000), *trans. denied.*

█ In the present case, at 2:20 a.m., Officer Campbell observed Shirley both weaving his bicycle between the northbound and southbound lanes and falling off the bicycle two or three times. Officer Campbell did not stop Shirley per se. Rather, concerned about possible impairment of health or otherwise, Officer Campbell simply asked Shirley as he rode closer if he was all right. At that time, no other officers were present. Moreover, no evidence was presented that would indicate that Officer Campbell displayed a weapon or that he spoke using language, or in a tone of voice, mandating compliance. Instead, at this point, the situation appeared to be just the sort of voluntary interaction wherein a law enforcement officer was simply making a "casual and brief inquiry of a citizen which involves neither an arrest nor a stop." *See id.* at 663. Thus, the Fourth Amendment was not implicated up to that point.

█ However, in speaking with Shirley, Officer Campbell noticed that Shirley had "a strong odor of an alcoholic beverage on this breath," glassy eyes, slightly slurred speech, and a sway. This additional information, coupled with the manner in which Shirley was maneuvering his bicycle at 2:20 a.m., caused Officer Campbell to suspect that Shirley was intoxicated. Hence, the officer requested identification and the casual inquiry became a stop. *See Finger,* 799 N.E.2d at 533 (noting how officer's retention of a driver's license converted a consensual encounter into an investigative stop requiring reasonable suspicion).

█ To withstand Constitutional scrutiny, an investigatory stop requires the presence of a reasonable suspicion based on articulable facts which, together with the reasonable inferences arising therefrom, would permit an ordinary prudent person to believe that criminal activity has or was about to occur. *Burkett v. State,* 736 N.E.2d 304, 306 (Ind.Ct.App.2000). "Such reasonable suspicion must be comprised of more than an officer's general 'hunches' or unparticularized suspicions." *Webb v. State,* 714 N.E.2d 787, 788 (Ind.Ct. App.1999). The facts supporting a reason-

able suspicion that criminal activity is afoot must rise to "some minimum level of objective justification" for the temporary detention of a person to be valid. *Reeves v. State*, 666 N.E.2d 933, 936 (Ind.Ct.App. 1996).

We have no trouble concluding that under the circumstances, Officer Campbell had reasonable suspicion to believe that criminal activity, specifically public intoxication,[3] was afoot. Accordingly, Officer Campbell's request for identification was justified. Upon calling in the information and learning of the outstanding arrest warrant, Officer Campbell placed Shirley under arrest, conducted a lawful search incident to arrest, and found the pills. Given these facts, we conclude that there was no violation of the Fourth Amendment.[4] Accordingly, the trial court did not abuse its discretion in denying the motion to suppress evidence.

### Sufficiency of the Evidence

In challenging the sufficiency of the evidence, Shirley maintains that he "was carrying the [pills at] the request of his mother, who was prescribed the medication to relieve the pain associated with her chronic rheumatoid arthritis, to deliver the medication to her." Appellant's Br. at 8. For support, he relies on his mother's testimony.

■■■■ Our standard of review when considering the sufficiency of evidence is well settled.

We will not reweigh the evidence or consider the credibility of witnesses.

Only the evidence most favorable to the verdict, together with all reasonable inferences that can be drawn therefrom will be considered. If a reasonable trier of fact could have found the defendant guilty based on the probative evidence and reasonable inferences drawn therefrom, then a conviction will be affirmed.

*Wilson v. State*, 754 N.E.2d 950, 957 (Ind. Ct.App.2001) (citations omitted). To convict Shirley of the Class D felony, the State was required to show beyond a reasonable doubt that he knowingly or intentionally possessed a controlled substance classified in schedule II without a valid prescription. *See* Ind.Code § 35-48-4-7(a).

■■■ According to Officer Campbell's trial testimony, Shirley was riding his bicycle at 2:20 a.m. with an unmarked bottle of pills in his front pant pocket. Shirley provided no prescription, valid or otherwise, for the Oxycodone, and explained to Officer Campbell, "Man, I got those pills from my mom." Tr. at 27. Shirley did not mention to Officer Campbell that he was taking anything to his mother. *Id.* at 31. In addition to that evidence, the jury heard Shirley's mother's testimony in defense of her son. Specifically, she stated that she was playing cards at a friend's house that evening, decided to stay overnight, telephoned Shirley at approximately 11:30 p.m., and asked that he bring her some of her pain pills as her severe arthritis in her hands was bothering her. Shirley's mother also testified that she had

---

**3.** *See Purcell v. State*, 721 N.E.2d 220, 222 (Ind.1999) (mentioning the crime of public intoxication).

**4.** In the same section of his brief in which he discusses the Fourth Amendment, Shirley mentions Article I, Section 11 of the Indiana Constitution. However, he does not conduct a separate analysis. While we could find that he has waived the Indiana Constitution issue,

*see Ackerman v. State*, 774 N.E.2d 970, 984 (Ind.Ct.App.2002), *trans. denied*, we note that under the totality of the circumstances, Officer Campbell's behavior was reasonable. *See Jackson v. State*, 785 N.E.2d 615, 618 (Ind.Ct. App.2003), *trans. denied*. Therefore, Indiana's Constitutional provision does not change our result.

never asked her son to bring her medication before, that she would not want to see her son go to jail, and that sometimes she carried medications with her in small bottles with child-proof caps and the labels removed.

In determining a verdict, it was the jury's job to judge the credibility of the witnesses and to weigh the evidence. Given the record provided on appeal, we cannot second-guess the jury's decision that the State met its burden. To conclude otherwise would be an invasion of the jury's province as the factfinder.

Affirmed.

SULLIVAN, J., and ROBB, J., concur.