Mark **CLARKE**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee.**

No. 49A05–0508–CR–435.

Court of Appeals of Indiana.

Sept. 29, 2006.

Transfer Granted Dec. 7, 2006.

Michael E. Caudill, Caudill and Associates, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, Mark Clarke, brings this interlocutory appeal challenging the trial court's denial of his motion to suppress. Upon appeal, Clarke presents three issues for our review which we consolidate and restate as: whether his right to be secure from unreasonable search and seizure as guaranteed by the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution was violated.

We reverse and remand.

On the night of September 17, 2004, Officer Tanya Eastwood of the Indianapolis Police Department was dispatched to 3736 North Meridian Street in Indianapolis on a narcotics complaint. An anonymous caller reported that drugs were being sold from a "black car with nice rims" which was parked in front of an apartment building at that location. Transcript at 4. When Officer Eastwood arrived at that location, she observed a 1995 black Nissan Maxima with shiny rims parked in front of the building and next to a fire hydrant. Officer Eastwood activated her vehicle's rear flashers and then shined a spotlight at the vehicle so she could see inside. Officer Eastwood then approached the car and initiated contact with the driver, later identified as Clarke, who had already gathered his license and registration. A second individual was sitting in the back seat on the passenger side of the vehicle.

Officer Eastwood asked Clarke what he was doing there and how long he had been there. Clarke responded that he had just

dropped off an individual at an apartment building located half a block away and that he had been sitting there for approximately five minutes. Officer Eastwood then obtained the passenger's identification information and then returned to her police cruiser to run a license and warrant check. Reports on Clarke and his passenger revealed no outstanding warrants or other issues. Officer Eastwood approached Clarke's vehicle again, returned his license and registration, and then informed him that she was there investigating a narcotics complaint. Officer Eastwood asked Clarke if he had anything illegal in the vehicle, to which he answered no. Officer Eastwood then asked Clarke if she could search the vehicle, and Clarke repeated that he did not have anything illegal in the vehicle. Officer Eastwood testified that she then asked Clarke, "[D]o you mind if I search it and he said no." Transcript at 9. Clarke then voluntarily opened the car door and exited the vehicle. Clarke left the car door open, and Officer Eastwood testified that his body language indicated that she had permission to search the car. A second officer at the scene removed the passenger, and then Officer Eastwood searched the vehicle.

Upon searching the vehicle,[1] Officer Eastwood discovered in the center console a large amount of money divided into several different bundles according to denomination. As she continued to search the vehicle, Officer Eastwood found a plastic bag containing a green leafy substance which Officer Eastwood suspected was marijuana. Officer Eastwood then placed Clarke under arrest for possession of marijuana. In the meantime, a park ranger and his drug-sniffing dog had arrived at

that location. The dog indicated that additional contraband was in the vehicle. The officer handling the dog discovered a plastic baggie which contained five individually wrapped baggies, each themselves containing a solid, off-white substance which the officers believed to be over three grams of cocaine.

On September 20, 2004, the State charged Clarke with dealing in cocaine or narcotics as a Class A felony, possession of cocaine or narcotics as a Class C felony, possession of marijuana as a Class A misdemeanor, and resisting law enforcement as a Class A misdemeanor. On May 3, 2005, pursuant to a motion to suppress filed by Clarke, the trial court held a suppression hearing. At the conclusion of the hearing, the trial court ordered the parties to submit briefs in lieu of oral arguments. The trial court took the matter under advisement pending submission of such briefs. At a hearing on June 14, 2005, the trial court denied Clarke's motion to suppress. On June 30, 2005, Clarke filed a petition to certify the order for interlocutory appeal, which the trial court granted on July 5, 2005. This court accepted Clarke's petition for interlocutory appeal.

We review the denial of a motion to suppress in a manner similar to other sufficiency matters. *Scott v. State*, 803 N.E.2d 1231, 1234 (Ind.Ct.App.2004). In reviewing a motion to suppress ruling, we do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. Id. However, unlike the typical sufficiency of the evidence case where only the evidence favorable to the judgment is considered, we must also

---

1. At the suppression hearing, Clarke requested that testimony regarding the evidence and contraband seized during the search of his vehicle not be presented as the issue before the court was only as to the propriety of the search. For completeness, we have referred to the probable cause affidavit which sets forth how the search was conducted and what evidence and contraband was found in Clarke's vehicle.

consider uncontested evidence favorable to the defendant. *Id.* We will affirm the judgment of the trial court if it is sustainable on any legal grounds apparent in the record. *Id.*

Upon appeal, Clarke provides us with several bases upon which he argues that the trial court erred in denying his motion to suppress. Specifically, Clarke argues that his rights under the Fourth Amendment and Article 1, Section 11 were violated when Officer Eastwood searched his vehicle. Clarke argues that his initial encounter with Officer Eastwood was not consensual, and even if it was, it quickly evolved into an investigatory stop for which Officer Eastwood did not have the requisite reasonable suspicion. Clarke further argues that his consent to search was not freely and voluntarily given. In a related argument, Clarke argues that Officer Eastwood's failure to advise him of his right to the presence and advice of counsel prior to making the decision whether to give consent to search violated his rights as set out in *Pirtle v. State*, 263 Ind. 16, 323 N.E.2d 634 (1975). In response, the State argues that the encounter between Clarke and Officer Eastwood was a consensual encounter and that Clarke freely and voluntarily consented to the search of his car.

◼ The Fourth Amendment protects citizens against "unreasonable searches and seizures." *Jefferson v. State*, 780 N.E.2d 398, 403 (Ind.Ct.App.2002). This protection extends to a person's automobile, though to a lesser degree than it protects homes. Id. Likewise, Article 1, Section 11 provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated." *Ammons v. State*, 770 N.E.2d 927, 931 (Ind.Ct.App.2002), *trans. denied.* The purpose of Article 1, Section 11 is to pro-

tect those areas of life which Hoosiers regard as private from unreasonable police activity. *Brown v. State*, 653 N.E.2d 77, 79 (Ind.1995). Automobiles are among the "effects" protected by Article 1, Section 11. *Ammons*, 770 N.E.2d at 931.

◼ As has been noted before, there are three levels of police investigation, two of which, an investigatory stop and an arrest or detention, implicate the Fourth Amendment. *Overstreet v. State*, 724 N.E.2d 661, 663 (Ind.Ct.App.2000), *trans. denied.* The third, a consensual encounter, does not implicate the protections of the Fourth Amendment. *Id.*

◼ The issue which we must first decide is whether the encounter between Clarke and Officer Eastwood was a consensual encounter or an investigatory stop. So long as an individual engaged by police remains free to leave, the encounter is consensual. *Jefferson*, 780 N.E.2d at 403. In determining whether a citizen is free to walk away from an encounter with police, we consider " 'whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.' " *Id.* (quoting *Florida v. Bostick*, 501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)). A consensual encounter, however, may evolve into an investigatory stop. *Finger v. State*, 799 N.E.2d 528, 533 (Ind.2003). When an individual no longer remains free to leave the officer's presence, an investigatory stop has begun. *Dawson v. State*, 786 N.E.2d 742, 745 (Ind.Ct.App.2003), *trans. denied.*

Our decision is guided by this court's decision in *Sanchez v. State*, 803 N.E.2d 215 (Ind.Ct.App.2004), *trans. denied.* In that case, officers approached the defendant and began questioning him. The officers asked Sanchez to take his hands out

of his pockets and to show identification. When Sanchez could not produce an identification card, one of the officers asked for his name, and Sanchez gave the name "Carlos Hernandez." One of the officers then returned to the car and investigated the information for open warrants, which investigation did not turn up any information on a "Carlos Hernandez." The officers, however, continued questioning Sanchez and eventually accompanied him to an apartment in order to obtain verification of his identity by an individual Sanchez had claimed was his uncle. When his identity was not verified, the officers placed Sanchez under arrest.[2] A search incident to arrest revealed a small amount of marijuana on Sanchez's person.

Upon appeal from the denial of Sanchez's motion to suppress, this court considered the propriety of the search. After relating the facts in the record, this court concluded that Sanchez's initial encounter with the officers was consensual, but that the encounter evolved into an investigatory stop as soon as Sanchez remained detained after he was notified that the name "Carlos Hernandez" was "not on file." 803 N.E.2d at 220. The court noted that it was at that point that Sanchez should have been free to go. *Id.* at 221. The court concluded that the officers' further questioning of Sanchez as to his identity and address and the fact that they accompanied him to an apartment to verify his identity was conduct which communicated to a reasonable person that Sanchez was no longer free to terminate the encounter. *Id.* Because the court then concluded that the investigatory stop was not supported by reasonable suspicion, and therefore that Sanchez's seizure was illegal, the court held that the evidence seized as a result of the search incident to arrest had to be suppressed as "fruit of the poisonous tree." *Id.* at 223.

Here, as in *Sanchez,* we conclude that the initial encounter between Clarke and Officer Eastwood was a consensual encounter, albeit that Officer Eastwood was responding to an anonymous tip concerning narcotics activity. Upon arriving at the location identified by the anonymous caller, Officer Eastwood simply approached Clarke because he was in a vehicle matching the description given by the anonymous caller and asked a few general questions about what he was doing and how long he had been sitting there. Officer Eastwood then obtained Clarke's identification. We have before held that no seizure occurs from the simple act of an officer approaching the occupant of a parked car to ask a question. *See Jefferson,* 780 N.E.2d at 404. That is precisely what occurred here, at least initially.

We agree with Clarke, however, that, under the facts of this case, the consensual encounter escalated into an investigatory stop, thereby invoking the protections of the Fourth Amendment. To be sure, after returning to Clarke his license and registration, Officer Eastwood did not inform Clarke that he was free to leave, nor did she cite him for an infraction or other violation of law.[3] Rather, Officer Eastwood informed Clarke that she was

---

2. Sanchez's true identity was discovered after he was transported to the Indianapolis Police Department's Identification Unit and fingerprinted.

3. We note that at the suppression hearing, Officer Eastwood testified that when she located Clarke's vehicle she observed that it was parked "next to the fire hydrant." Transcript at 5. Officer Eastwood did not further explain the position of Clarke's vehicle. Upon returning Clarke's license, Officer Eastwood did not cite Clarke for parking too close to the fire hydrant, see Ind.Code § 9–21–16–5 (Burns Code Ed. Repl.2004), nor did she ask him to move his car.

investigating a narcotics complaint. Officer Eastwood then asked Clarke an incriminating question—specifically, whether he had anything illegal in his vehicle. Clarke responded that he did not. Still, Officer Eastwood continued with her investigation, this time asking Clarke if she could search his car, to which Clarke repeated that he did not have anything illegal in the vehicle. Officer Eastwood again asked Clarke if he minded if she searched his car, and Clarke gave the ambiguous response of "no."

As in *Sanchez,* after Officer Eastwood's investigation produced a negative result, Clarke should have been free to go. It was at this point the consensual encounter ended and an investigatory stop clearly began. Although Officer Eastwood did not escort Clarke to a different location, as the officers did to Sanchez, she nevertheless continued to detain Clarke by asking him an incriminating question and twice asking to search his vehicle. Officer Eastwood's conduct communicated to a reasonable person that Clarke was not free to leave and that the consensual encounter had turned into a brief detention for investigatory purposes.

Where the Fourth Amendment is implicated, the State has the burden of proving that the search falls into one of the recognized exceptions to the warrant requirement. *Jefferson,* 780 N.E.2d at 404. Although arguing that the encounter was consensual and thus, the protections of the Fourth Amendment were not implicated, the State also asserts that Clarke consented to the search of his vehicle. However, before addressing the validity of Clarke's consent, we must first address whether continued detention of Clarke for investigatory purposes was supported by the requisite reasonable suspicion.

To withstand constitutional scrutiny, an investigatory stop, better known as a *Terry* stop, requires the presence of a reasonable suspicion based upon articulable facts which, together with the reasonable inferences to be drawn therefrom, would permit an ordinary prudent person to believe that criminal activity has or was about to occur. *Id.* Reasonable suspicion is more than an officer's general hunches or unparticularized suspicions. *Id.* The facts supporting a reasonable suspicion determination must rise to " 'some minimum level of objective justification' " for the temporary detention of a person to be valid. *Id.* at 404–05 (quoting *Reeves v. State,* 666 N.E.2d 933, 936 (Ind.Ct.App. 1996)). Whether an officer had reasonable suspicion in a particular case is determined by considering the totality of the circumstances. *Id.* at 405.

Here, all that was known to Officer Eastwood was general information provided by an anonymous tip regarding drug activity from a particular car described only by color and the appearance of the rims. Though we have held before that an anonymous or unidentified informant can supply information that gives police reasonable suspicion, the general rule is that an anonymous tip is not likely to constitute the reasonable suspicion necessary for a valid *Terry* stop unless two conditions are met. First, "significant aspects" of the tip must be corroborated by the police. *Sellmer v. State,* 842 N.E.2d 358, 361 (Ind.2006). Corroboration requires that an anonymous tip give the police something more than details regarding facts easily obtainable by the general public to verify its credibility. *Id.* Second, for an anonymous tip to be considered reliable enough to constitute reasonable suspicion to conduct an investigatory stop, an anonymous tip must demonstrate an intimate familiarity with the suspect's affairs and be able to predict future behavior. *Id.*

Here, the anonymous tip provided the police with information to identify a particular car and an allegation of criminal activity. The tip, however, lacked any information which would have permitted the police to corroborate the caller's claim that criminal activity was afoot. In investigating the anonymous tip, Officer Eastwood corroborated only the color of vehicle and the shiny rims. Such general information was within the public's knowledge and thus does not constitute corroboration of significant aspects of the tip or give rise to reasonable suspicion. *See Sellmer*, 842 N.E.2d at 361. Officer Eastwood did not observe any conduct by Clarke or his passenger which was suggestive of criminal activity. That Clarke was parked in an area which Officer Eastwood believed was suspicious given Clarke's claim that he had just dropped off an individual at an apartment complex a half block away, and which had its own drive for picking up and dropping off, gives rise only to an unparticularized suspicion or hunch. The only other information known to Officer Eastwood was that Clarke had no outstanding warrants. Given the totality of the circumstances, we conclude that Officer Eastwood lacked reasonable suspicion to detain Clarke for investigatory purposes, and thus, her continued detention of Clarke was illegal.

 Having concluded that Clarke was illegally detained, we need now determine whether the evidence obtained from the search of the vehicle should be excluded as "fruit of the poisonous tree." The "fruit of the poisonous tree" doctrine is part of the exclusionary rule of evidence which bars the admissibility in a criminal proceeding of evidence obtained in the course of unlawful searches and seizures.

*Hanna v. State*, 726 N.E.2d 384, 389 (Ind. Ct.App.2000). In application, the doctrine bars not only evidence directly obtained, but also evidence derivatively gained as a result of information learned or leads obtained during an unlawful search or seizure. *Id.* Where a defendant can show that evidence was obtained in violation of his Fourth Amendment rights, the doctrine may be invoked. *Id.* The defendant must show that the search or seizure was illegal in the first instance. *Id.* The doctrine does not apply, however, when the derivative evidence has an independent source, when the connection between the illegal conduct of the police and the discovery of the challenged evidence is so attenuated as to dissipate the taint, or when the challenged evidence would inevitably have been properly obtained. *Id.*

 In the present case, we agree with Clarke that Officer Eastwood violated his Fourth Amendment rights by detaining him for purposes of conducting an investigatory stop without the requisite reasonable suspicion.[4] We further note that Clarke's consent was procured after Officer Eastwood illegally detained him for purposes of conducting an investigatory stop. Under the circumstances of this case, we conclude that the evidence seized during the search was directly connected to the illegal detention. To be sure, Clarke's consent was obtained shortly after he was illegally detained, there were no intervening circumstances between the initiation of the illegal detention and Clarke's consent, and Officer Eastwood's continued questioning of Clarke was clearly an attempt to exploit the illegal detention. Thus, Clarke's consent, even if "volun-

4. Having concluded that Clarke's Fourth Amendment rights were violated, we need not address Clarke's argument that his rights under Article 1, Section 11 of the Indiana Constitution were likewise violated.

tary," [5] was tainted by the illegal detention. *See United States v. Momodu,* 909 F.Supp. 1571, 1577 (1995) (holding that evidence seized pursuant to consent search must be suppressed where consent tainted by illegal detention). We therefore conclude that the evidence seized as a result of the search of Clarke's car must be suppressed as "fruit of the poisonous tree." *See id. See also Sanchez,* 803 N.E.2d at 223; *Hanna,* 726 N.E.2d at 389.

The judgment of the trial court is reversed.

BAKER, J., and MAY, J., concur.

**5.** Moreover, we note that where the State cannot establish that consent was freely and voluntarily given, a defendant's consent to search is not valid. *Ammons,* 770 N.E.2d at 933. Generally, a defendant's consent to search is valid except where it is procured by fraud, duress, fear, intimidation, or where it is merely a submission to the supremacy of the law. *Id.* Under the circumstances of this case, where Clarke, while sitting in a car, had a spotlight shined on him, was approached by a uniformed police officer, and, after cooperating with the officer, was detained further by the officer's incriminating questions and repeated requests to search his vehicle, we would be hard-pressed to say that Clarke's consent was not simply submission to police authority.