**Ben COCHRAN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 69A01–0504–CR–173.**

Court of Appeals of Indiana.

March 17, 2006.

Rehearing Denied May 9, 2006.

or otherwise committed error in setting aside the Adoption Decree.

68(4)

Leanna Weissmann, Lawrenceburg, for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Ben Cochran appeals his conviction for operating a vehicle without ever having received a license, a Class C misdemeanor. We affirm.

### Issue

The issue before us is whether the trial court properly admitted evidence that Cochran claims was obtained in violation of the United States and Indiana Constitutions.

### Facts

The evidence most favorable to the judgment reveals that on November 13, 2003, Versailles Town Marshal David Adams was informed by dispatch that a citizen had called to complain about a person standing at the intersection of U.S. 50 and State Road 421 and displaying a poster apparently depicting an aborted fetus. The caller alleged that the poster was obscene. Marshal Adams went to the intersection to investigate the complaint. He approached the person holding the poster, Cochran, advised that he was investigating a complaint, and asked Cochran for identification. Initially, Cochran was reluctant to comply, stating that there was no law requiring that he have identification. However, after Marshal Adams explained that he wanted to know Cochran's identity for his own safety and to know to whom he was talking, Cochran gave his name and date of birth. Marshal Adams called the information into dispatch, which relayed to him that there were no outstanding warrants for Cochran and that there was no information at all on Cochran, including that he apparently had no driver's license.

Marshal Adams then returned to Cochran and said that there was no reason he could not continue protesting and displaying his poster. Later that day, however, Marshal Adams observed Cochran driving a vehicle. Because of his knowledge that Cochran had no driver's license, Marshal Adams pulled him over and issued a citation for driving without a license.

After determining that Cochran had never received a driver's license, the State charged him with operating a vehicle without ever having received a license, a Class C misdemeanor. Cochran moved to suppress all evidence derived from Marshal Adams's request for identification, claiming that the information gained thereby was the fruit of an illegal stop or seizure. The trial court denied the motion. At Cochran's bench trial, he objected to the same evidence, which the trial court overruled. The trial court found Cochran guilty and imposed a fine of $1 and costs of $136. Cochran now appeals.

### Analysis

Cochran asserts that the trial court erred in denying his motion to suppress. We note, however, that this case proceeded to trial, at which time Cochran renewed his objection to the evidence that was challenged unsuccessfully by the motion to suppress. Once a case proceeds to trial, the question of whether the trial court erred in denying a motion to suppress is no longer viable. *Kelley v. State,* 825 N.E.2d 420, 424 (Ind.Ct.App.2005). A

ruling upon a pretrial motion to suppress is not intended to serve as the final determination of admissibility because it was subject to modification at trial. *Id.* At this point, Cochran's only available argument is whether the trial court erred in admitting the evidence at trial. *See id.* at 425.

▆▆▆ We will reverse a trial court's ruling on the admissibility of evidence only when the trial court abused its discretion. *Id.* at 424. An abuse of discretion may occur if a decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* Regarding the "abuse of discretion" standard generally, our supreme court has recently observed, "to the extent a ruling is based on an error of law or is not supported by the evidence it is reversible, and the trial court has no discretion to reach the wrong result." *Pruitt v. State,* 834 N.E.2d 90, 104 (Ind.2005). The relevant facts of this case are largely undisputed, and a determination of whether the trial court "abused its discretion" is primarily a purely legal question that the trial court would not have had "discretion" to decide incorrectly.

▆▆▆ The dispositive question in this case is whether Marshal Adams "seized" Cochran when he asked for and obtained identification from Cochran. This court has explained that there are three levels of police investigation, two that implicate the Fourth Amendment to the United States Constitution and one that does not.

First, the Fourth Amendment requires that an arrest or detention for more than a short period be justified by probable cause. Probable cause to arrest exists where the facts and circumstances within the knowledge of the officers are sufficient to warrant a belief by a person of reasonable caution that an offense has been committed and that the person to be arrested has committed it. Second, it is well-settled Fourth Amendment juris-

prudence that police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based on specific and articulable facts, the officer has a reasonable suspicion that criminal activity "may be afoot." Accordingly, limited investigatory stops and seizures on the street involving a brief question or two and a possible frisk for weapons can be justified by mere reasonable suspicion. Finally, the third level of investigation occurs when a law enforcement officer makes a casual and brief inquiry of a citizen which involves neither an arrest nor a stop. In this type of "consensual encounter" no Fourth Amendment interest is implicated.

*Overstreet v. State,* 724 N.E.2d 661, 663 (Ind.Ct.App.2000), *trans. denied* (citations omitted). We agree that if Marshal Adams "seized" Cochran when he asked for identification, there was no objectively reasonable basis for such a seizure. There is no evidence that Cochran was engaged in any observable illegal activity at the time the question was asked. We hold, however, that there was no seizure.

▆▆▆ In *Overstreet,* this court held there was no "stop" or "seizure" of a defendant where the defendant pulled into a gas station and was fueling his vehicle, and an officer pulled his vehicle behind the defendant without activating the lights, approached him, asked for identification, and questioned him about some suspicious activity the officer had observed. *Id.* at 664. We noted, "Not every encounter between a police officer and a citizen amounts to a seizure requiring objective justification." *Id.* Under the Fourth Amendment, a person is "seized" only when, by means of physical force or a show of authority, his or her freedom of movement is restrained. *United States v. Mendenhall,* 446 U.S. 544, 553, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497

(1980). Examples of circumstances that might indicate a seizure where the person did not actually attempt to leave the scene would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *Id.* at 554, 100 S.Ct. at 1877. "In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *Id.* at 555, 100 S.Ct. at 1877.

 The Supreme Court also has stated, "Our cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991). "Asking questions is an essential part of police investigations. In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment." *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County,* 542 U.S. 177, 185, 124 S.Ct. 2451, 2458, 159 L.Ed.2d 292 (2004).

> While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response.... Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the Fourth Amendment.

*I.N.S. v. Delgado,* 466 U.S. 210, 216, 104 S.Ct. 1758, 1762–63, 80 L.Ed.2d 247 (1984). If a person refuses to answer a police officer's request for identification, and the police then use more intimidating means of questioning under which a reasonable person would not have believed he or she was free to leave, such as physically detaining the person, then a Fourth Amendment seizure has occurred and some minimal level of objective justification is required to validate the detention or seizure. *Id.* at 216–17, 104 S.Ct. at 1763 (citing *Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979)).

We conclude that the conversation here between Marshal Adams and Cochran clearly falls within the category of a "consensual encounter" as recognized in *Bostick, Hiibel,* and *Delgado.* Marshal Adams approached Cochran as he was standing on a public street corner. He did not request that Cochran move anywhere, did not stop Cochran from moving anywhere, and never physically restrained him. He simply asked Cochran to identify himself, which is clearly permissible under the Fourth Amendment. Marshal Adams was alone, and there is no evidence he displayed a weapon or spoke to Cochran in a threatening tone of voice. Although Cochran initially objected to identifying himself, Marshal Adams did not use any coercive measures to persuade Cochran to do so. Instead, Cochran freely identified himself after Marshal Adams explained that he was requesting identification for his own protection, i.e. apparently so as to ensure that Cochran was not a known dangerous individual or had an outstanding arrest warrant.

Additionally, the question of whether Cochran was "seized" when Marshal Adams asked him to identify himself is an objective one. *See Michigan v. Chesternut,* 486 U.S. 567, 574, 108 S.Ct. 1975, 1980, 100 L.Ed.2d 565 (1988). Thus, it essentially is irrelevant whether Cochran himself felt "seized" or whether Marshal Adams thought he might have asked Coch-

ran to stop if he started walking away. This case is different from one in which a police officer physically retains a piece of identification belonging to a person, such as a driver's license, without which a person might feel compelled to wait until the officer returned the identification. *Cf. Finger v. State,* 799 N.E.2d 528, 533 (Ind. 2003). Officer Adams did not retain anything that belonged to Cochran when Cochran simply supplied Officer Adams with his name and date of birth and not any physical piece of identification.

Finally, even if it could be posited that Cochran was "seized" while Marshal Adams called Cochran's name and date of birth into headquarters, the fact remains that the earlier request for identification had no Fourth Amendment implications. From that request, Marshal Adams was able to determine that Cochran had no driver's license and that it was illegal for Cochran to drive a vehicle. It would not have mattered if Cochran had attempted to walk away from Marshal Adams while he contacted headquarters—Marshal Adams would have learned of Cochran's lack of a driver's license anyway. Marshal Adams' request for identification did not violate the Fourth Amendment.

 Cochran develops a separate argument that Marshal Adams's request for identification constituted unreasonable police activity in violation of Article 1, Section 11 of the Indiana Constitution. "The legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances." *Litchfield v. State,* 824 N.E.2d 356, 359 (Ind.2005). The totality of the circumstances requires consideration of both the degree of intrusion into the sub-

ject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure. *Id.* at 360. Although there may be other relevant considerations under the circumstances, the reasonableness of a search or seizure turns on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs. *Id.* at 361.

Here, admittedly, Marshal Adams may have had little reason to suspect that Cochran was engaged in any illegal activity. On the other hand, Marshal Adams only minimally intruded upon Cochran's activities. He merely approached Cochran on a public street and asked him to identify himself; he did not "stop" Cochran in any way. Marshal Adams did not make this request at random, but in response to a complaint that had been made specifically against Cochran because he was displaying a poster of an aborted fetus. Law enforcement needs should allow that when police officers have been requested as part of their duties to interact with an individual, they should be free to verify that that person does not have known or suspected dangerous propensities. This goal can be accomplished by checking the person's name against law enforcement records. Additionally, there is no indication here that Marshal Adams requested Cochran's name and birth date for the specific purpose of establishing whether he had a driver's license; his police dispatcher simply provided him with that information after Cochran's name apparently was run through a computer database.[1] We conclude that Marshal Adams's conduct in this

---

1. It appears, viewing the evidence most favorable to the trial court's ruling, that when Cochran's name and date of birth were run through the available records, there were no records for him at all, not even for a driver's license, and this information was relayed to Marshal Adams.

case was reasonable, as required by Article 1, Section 11 of the Indiana Constitution.

## Conclusion

The trial court properly admitted all of the evidence in this case; Marshal Adams's interaction with Cochran and request for identification violated neither the United States nor Indiana Constitutions. We affirm.

Affirmed.

SHARPNACK, J., concurs.

RILEY, J., dissents with separate opinion.

RILEY, Judge dissenting.

I respectfully dissent from the majority's conclusion that the encounter between Marshal Adams and Cochran was consensual. Rather, I find that Cochran was seized for Fourth Amendment purposes without an objectively reasonable basis; consequently, I conclude that the information Marshal Adams gathered from Cochran during the seizure should have been suppressed.

The United States Supreme Court has acknowledged that the test for determining whether a seizure has occurred is "necessarily imprecise, because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation." *Bentley v. State,* 779 N.E.2d 70, 74 (Ind.Ct.App.2002) (quoting *Michigan v. Chesternut,* 486 U.S. 567, 573, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988)). "In order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Bentley,* 779 N.E.2d at 73–74 (quoting *Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)). As long as an individual engaged by the police remains free to leave, the encounter is consensual, and there has been no intrusion upon that person's liberty or privacy to require some particularized and objective justification. *Sanchez v. State,* 803 N.E.2d 215, 220 (Ind.Ct.App. 2004), *trans. denied.* "What constitutes a restraint on liberty prompting a person to conclude that he is not free to 'leave' will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs." *Bentley,* 779 N.E.2d at 74 (quoting *Chesternut,* 486 U.S. at 573, 108 S.Ct. 1975).

Here, I find that while Marshal Adams may have been initially conducting a casual inquiry, an investigatory stop was initiated once Marshal Adams requested Cochran's identifying information with the purpose of running a background check on him. *See Shirley v. State,* 803 N.E.2d 251, 255 (Ind. Ct.App.2004) (where this court found that a stop ensued once an officer requested identification from a biker whom he had first pulled up alongside to ask if the biker was "all right"); *See also Finger v. State,* 799 N.E.2d 528, 533 (Ind.2003) (holding that a reasonable person who leaves identification with an officer would not feel free to leave). Although Marshal Adams did not possess any tangible form of Cochran's identification, my evaluation of the record indicates that Cochran was not free to leave during this period of time. In particular, I find evidence in the record showing that Marshal Adams' questioning reasonably led Cochran to feel as though he had to comply with the requests for information, and was not free to terminate the encounter until Marshal Adams finished

the background check. *See Bentley,* 779 N.E.2d at 73–74.

In addition, even though law enforcement may detain an individual for investigatory purposes without probable cause, the detainment must be based on specific and articulable facts, and the officer must have a reasonable suspicion that the person detained is involved in criminal activity. *Finger,* 799 N.E.2d at 532. Furthermore, to withstand Constitutional scrutiny, the facts supporting a reasonable suspicion must rise to "some minimum level of objective justification" for the temporary detention of a person. *Shirley,* 803 N.E.2d at 255–56. In the present case, any reasonable suspicion that Marshal Adams may have had that Cochran was involved in criminal activity would have originated with the citizen complaint received by dispatch, which merely alleged that Cochran's protest signs were obscene. Moreover, once Marshal Adams observed Cochran conducting a lawful protest, there was no supplementary reason to suspect Cochran of illegal activity. Thus, I fail to find that any reasonable suspicion existed to even briefly detain Cochran. As a result, I conclude that the information Marshal Adams' seized during his investigatory stop of Cochran, specifically that Cochran did not have a driver's license, was unlawfully obtained and in violation of Cochran's Fourth Amendment rights.