**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**ELIZABETH A. BELLIN**
Cohen Law Offices
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSHUA J. SHARP, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1109-CR-422 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable Olga H. Stickel, Judge
Cause No. 20D04-1010-FD-288

April 5, 2012

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Joshua J. Sharp appeals his conviction for Class D felony possession of a controlled substance. He argues that the police officer's search of the center console of his vehicle violated both the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution because it exceeded the scope of his consent to search. Because the evidence shows that Sharp did not restrict his consent to search the vehicle, we find no constitutional violations and therefore affirm the trial court.

**Facts and Procedural History**

On October 10, 2010, Elkhart City Police Department Officer Dustin Young was on patrol when he heard loud music coming from a vehicle driven by Sharp. Because Officer Young could hear the music from over thirty-five feet away, which was in violation of the city noise ordinance, he initiated a traffic stop. The stop was video and audio recorded by Officer Young's in-car camera and microphone on his person.

While approaching Sharp's vehicle, Officer Young observed a bong in the backseat. Although a bong can be used for both illegal and legal activities, it is "[n]ormally used for marijuana." Tr. p. 73. Officer Young took Sharp's driver's license and registration and returned to his patrol car to run the information.

Officer Young returned to Sharp's vehicle and said that he was giving him a break by not giving him a ticket, explained the hefty fines for any future noise-ordinance violation, and informed Sharp that he was free to leave. Officer Young added that he did

2

"have one question, though" because of the bong in the backseat. State's Supp. Ex. 1.[1]

Sharp responded that it was for hookah tobacco and he was going to let the officer look through it anyway. *Id.*; Tr. p. 76. Officer Young then asked, "Do you mind if I take a look through the vehicle then, since . . . I do see that obviously?" State's Supp. Ex. 1. Sharp replied, "Yeah, you can check that out." *Id.* As Sharp exited the vehicle, Officer Young explained that he needed to "make sure, obviously" because he normally did not see "hookah" in that area. *Id.* Sharp added, "You can *even* check in the box." *Id.* (emphasis added). After Officer Young performed a quick pat down on Sharp, Sharp sat down on the curb while Officer Young searched his vehicle. Officer Young first searched the bong but did not detect any signs of marijuana. Officer Young then searched the center console and found fifteen Adderall pills. Sharp did not have a prescription for Adderall, which is a controlled substance. When Officer Young asked Sharp why he did not tell him about the pills, Sharp responded that he "figured" Officer Young would find them and therefore let him "do the honors for [him]." *Id.* Officer Young arrested Sharp.

The State charged Sharp with Class D felony possession of a controlled substance. Sharp filed a motion to suppress the Adderall pills on grounds that he only consented to Officer Young searching the bong and box, not his entire vehicle. At the hearing, the State presented the video and audio recording of the traffic stop. Tr. p. 21. The trial

---

[1] At the motion to suppress hearing, the State introduced the audio and video recording of the traffic stop. We use this recording, called "State's Supp. Ex. 1," for our facts. At trial, the State introduced the same recording as State's Ex. 3. However, only portions of the traffic stop were played at trial. Tr. p. 93-96.

court later issue a five-page order denying Sharp's motion to suppress. In relevant part the trial court found:

14. [E]ven though Officer Young indicated to Defendant that he had seen the bong in the back seat, when the officer asked for consent to search, he did not limit his request to only that specific item. Rather, Officer Young asked if he could look through the vehicle. Defendant's response to Officer Young was that he could check it out. Thereafter, Officer Young further explained that he wanted to make sure because he did not usually see hookah around here. This statement conveys that Officer Young was requesting consent to look for marijuana. At this point, Defendant told Officer Young that he could even look in the box, which to a reasonable person would signify an extension of the search to include the box, as opposed to limiting the scope of the search to the box.

15. Considering the totality of the exchange between Officer Young and Defendant, the court concludes that it was reasonable for Officer Young to understand that Defendant gave his consent for the search of the vehicle, not just the bong and box. Based on the circumstances, a reasonable person would have understood that Officer Young wanted to look in the vehicle in places where illegal drugs might be. As a result of Defendant's consent, the search was not unreasonable.

Appellant's App. p. 174-75.

A jury trial was held at which Sharp objected to the admission of the Adderall pills on grounds that Officer Young exceeded the scope of his consent to search. The trial court overruled Sharp's objection for the reasons stated in the order. *See* Tr. p. 83-84. The jury found Sharp guilty of Class D felony possession of a controlled substance, and the trial court sentenced him to eighteen months, all suspended to probation.

Sharp now appeals.

**Discussion and Decision**

Sharp contends that the trial court erred in admitting the Adderall pills found in his center console into evidence because the search violated his rights under the Fourth

4

Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. We will reverse a trial court's ruling on the admissibility of evidence when the trial court abused its discretion. *Cochran v. State*, 843 N.E.2d 980, 983 (Ind. Ct. App. 2006), *trans. denied*. An abuse of discretion occurs if a decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* "When we review a trial court's ruling on the admissibility of evidence resulting from an allegedly illegal search, we do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling." *Reinhart v. State*, 930 N.E.2d 42, 45 (Ind. Ct. App. 2010).

### I. Fourth Amendment

The Fourth Amendment of the United States Constitution provides in pertinent part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure. *Pinkney v. State*, 742 N.E.2d 956, 959 (Ind. Ct. App. 2001), *trans. denied*. In cases involving a warrantless search, the State bears the burden of proving an exception to the warrant requirement. *Id.* A valid consent to search is one exception to the warrant requirement. *Id.* Here, Sharp argues that Officer Young exceeded the scope of his consent to search the vehicle because he only consented to a search of the bong and box, not the entire vehicle.

It is true that a consensual search allows a suspect to limit the search as he chooses. *Kubsch v. State*, 784 N.E.2d 905, 918 (Ind. 2003). The scope of the authority to search is strictly limited to the consent given, and a consensual search is reasonable only

5

if it is kept within the bounds of that consent. *Chiszar v. State*, 936 N.E.2d 816, 826 (Ind. Ct. App. 2010), *reh'g denied*, *trans. denied*. The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness, in other words, "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.*; *see also Florida v. Jimeno*, 500 U.S. 248, 251 (1991). In addition, the scope of a consensual search is generally defined by its expressed object. *Chiszar*, 936 N.E.2d at 826.

Here, the record shows that after telling Sharp he was free to leave, Officer Young said he did have one question, though, because he saw a bong in plain view in the backseat. Sharp responded that it was for hookah tobacco and he was going to let Officer Young look through it anyway. Officer Young then asked Sharp if he could "take a look through the vehicle." Sharp replied, "Yeah, you can check that out." As Sharp exited the vehicle, Officer Young told him that he wanted to make sure because he normally did not run across hookah. Sharp replied, "You can *even* check in the box." (Emphasis added).

Notably, it is undisputed that Officer Young asked Sharp if he could search the vehicle, not just the bong and box. Given Officer Young's broad request to search the vehicle, Sharp's reply of "Yeah, you can check that out" did not explicitly limit his consent to just the bong and box. Moreover, when Officer Young explained his concerns to Sharp, Sharp replied that Officer Young could "even" check the box. As the trial court below found, Sharp's use of the word "even" signals that his consent encompassed the entire vehicle, even the box. Using the test of objective reasonableness, the typical reasonable person would have understood by the exchange between Officer Young and

Sharp that Sharp consented to a search of his entire vehicle in order to find evidence of marijuana. This conclusion is bolstered by Sharp's retort to Officer Young after Officer Young discovered the fifteen Adderall pills in the center console. That is, when Officer Young asked Sharp why he did not tell him about the pills beforehand, Sharp said that he "figured" Officer Young would find them so he let him "do the honors" for him. Sharp's response indicated that he expected the officer to search the entire vehicle in the first place. Because Sharp consented to a search of his entire vehicle, Officer Young's search did not exceed the scope of Sharp's consent. Accordingly, there is no Fourth Amendment violation.

## II. Article 1, Section 11

Article 1, Section 11 of the Indiana Constitution provides in relevant part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated." Despite the fact that the text of Section 11 is nearly identical to the Fourth Amendment, Indiana courts interpret and apply it "'independently from federal Fourth Amendment jurisprudence.'" *Powell v. State*, 912 N.E.2d 853, 863 (Ind. Ct. App. 2009) (quoting *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001)). That is, our investigation under Section 11 places the burden on the State to demonstrate that the intrusion was reasonable in light of the totality of the circumstances. *Holder v. State*, 847 N.E.2d 930, 940 (Ind. 2006).

As we consider reasonableness based upon the particular facts of each case, "the Court also gives [Section 11] a liberal construction to angle in favor of protection for individuals from unreasonable intrusions on privacy." *Id.* At the same time, "Indiana

7

citizens have been concerned not only with personal privacy but also with safety, security, and protection from crime." *Id.* (quotation omitted). "It is because of concerns among citizens about safety, security, and protection that some intrusions upon privacy are tolerated, so long as they are reasonably aimed toward those concerns." *Id.* Thus, "'the totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure.'" *Id.* (quoting *Litchfield v. State*, 824 N.E.2d 356, 360 (Ind. 2005)). Our determination of the reasonableness of a search or seizure under Section 11 often "turn[s] on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Litchfield*, 824 N.E.2d at 361.

Here, the State has demonstrated that the intrusion was reasonable in light of the totality of the circumstances. When Officer Young broadly asked Sharp if he could search his vehicle, Sharp voluntarily consented without expressly limiting the scope of his consent to search to only the bong and box. Officer Young's degree of suspicion that Sharp possessed marijuana was fairly high, as Officer Young observed a bong in plain view in the backseat, Officer Young knew that bongs were typically used for marijuana, and hookah was not common in that area. In addition, the degree of intrusion was minimal. Officer Young limited his search to only those areas where Sharp could have reached during the traffic stop to hide or conceal marijuana. Tr. p. 16-17. Officer Young's search lasted only a few minutes, and he ended the search when he found the

8

Adderall pills in the center console.  During this time, Sharp sat unrestrained on the curb. Finally, the extent of law-enforcement needs was relatively high because Officer Young had suspicion of criminal activity.  Because the search was reasonable in light of the totality of the circumstances, there is no violation of Article 1, Section 11.

Because Officer Young's search did not violate the Fourth Amendment or Article 1, Section 11, the trial court did not abuse its discretion in admitting the Adderall pills into evidence.  We therefore affirm the trial court.

Affirmed.

CRONE, J., and BRADFORD, J., concur.

9